**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN HUSSON, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

GARRETT MOTION INC., OLIVIER RABILLER, ALLESSANDRO GILI, PETER BRACKE, SEAN DEASON AND SU PING LU,

Defendants.

Case No. 1:20-cv-07992-JPC

**CLASS ACTION**

**JURY TRIAL DEMANDED**

THE GABELLI ASSET FUND, THE GABELLI DIVIDEND & INCOME TRUST, THE GABELLI VALUE 25 FUND INC., THE GABELLI EQUITY TRUST INC., SM INVESTORS LP and SM INVESTORS II LP, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

SU PING LU, OLIVIER RABILLER, ALESSANDRO GILI, PETER BRACKE, SEAN DEASON, CRAIG BALIS, THIERRY MABRU, RUSSELL JAMES, CARLOS M. CARDOSO, MAURA J. CLARK, COURTNEY M. ENGHAUSER, SUSAN L. MAIN, CARSTEN REINHARDT, and SCOTT A. TOZIER,

Defendants.

Case No. 1:20-cv-08296-JPC

**CLASS ACTION**

**JURY TRIAL DEMANDED**

(Captions continued on next page)

| JOSEPH FROEHLICH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OLIVIER RABILLER, ALLESANDRO GILI, PETER BRACKE, SEAN DEASON, and SU PING LU,<br><br>Defendants. | Case No. 1:20-cv-09279-JPC<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |
|---|---|

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE GABELLI ENTITIES FOR (1) APPOINTMENT AS LEAD PLAINTIFF (2) APPROVAL OF CHOICE OF LEAD COUNSEL AND (3) CONSOLIDATION OF THE ACTIONS**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .... 1

FACTUAL BACKGROUND .... 4

ARGUMENT .... 6

I. THE GABELLI ENTITIES ARE THE "MOST ADEQUATE PLAINTIFF" .... 6

A. The Gabelli Entities Possess the Largest Financial Interest in the Actions .... 7

B. The Gabelli Entities Satisfy Rule 23's Typicality and Adequacy Requirements .... 9

C. The Gabelli Entities Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA .... 11

II. THE COURT SHOULD APPROVE THE GABELLI ENTITIES' CHOICE OF LEAD COUNSEL .... 11

III. THE ACTIONS SHOULD BE CONSOLIDATED .... 13

CONCLUSION .... 13

# TABLE OF AUTHORITIES

**Cases**

*In re Blue Apron Holdings,*
No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)........................ 7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................... 11

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
288 F.R.D. 26 (S.D.N.Y. 2012) ......................................................................................... 9

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp. 2d 286 (E.D.N.Y. 1998) .................................................................................. 7

*Lax v. First Merch. Acceptance Corp.,*
No. 97 C 2715, 1997 WL 461036, (N. D. Ill. Aug. 11, 1997)................................................ 7

*Maliarov v. Eros Int'l PLC*,
No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ............................. 6, 10

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)................................. 11

*Springer v. Code Rebel Corp.*,
No. 16-cv-3492 (AJN), 2017 WL 838197 (S.D.N.Y. Mar. 2, 2017)....................................... 6

**Statutes**

15 U.S.C. § 78j(b)............................................................................................................... 2

15 U.S.C. § 78t(a) ............................................................................................................... 2

15 U.S.C. § 78u-4(a)........................................................................................................ passim

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995),
*as reprinted in* 1995 U.S.C.C.A.N. 730 ......................................................................... 11

**Rules**

17 C.F.R. § 240.10b-5.......................................................................................................... 2

Fed. R. Civ. P. 23 ...................................................................................................... 3, 6, 7, 9

Fed. R. Civ. P. 42 ............................................................................................................... 13

The Gabelli Asset Fund, The Gabelli Dividend & Income Trust, The Gabelli Value 25 Fund Inc. and GAMCO Asset Management Inc. (collectively, the "Gabelli Entities") respectfully submit this memorandum of law in support of their motion for:

(1) Appointment as lead plaintiff[1] on behalf of a class consisting of all persons or entities that purchased or otherwise acquired Garrett Motion Inc. ("Garrett" or the "Company") securities during the period October 1, 2018 through September 18, 2020, inclusive (the "Class" and "Class Period"), and were damaged thereby;

(2) Approval of the Gabelli Entities' choice of Entwistle & Cappucci LLP ("Entwistle & Cappucci") as lead counsel for the putative Class; and

(3) Consolidation of the above-captioned actions (the "Actions") and any subsequently filed, removed or transferred related actions.

This motion is based on the points and authorities described herein, the *Complaint for Violations of the Federal Securities Laws* filed by certain Gabelli Entities on October 5, 2020 (the "Complaint" or "Comp.") (Case No. 1:20-cv-08296-JPC, ECF No. 1), other filings and records in the Actions and such other arguments as may be presented to the Court.

**PRELIMINARY STATEMENT**

The Gabelli Entities – consisting of subsidiaries of well-known diversified asset manager and financial services company GAMCO Investors, Inc. – have been significant (non-insider) equity investors in Garrett since its October 2018 spin off (the "Spin Off") from former parent Honeywell International Inc. ("Honeywell"). Indeed, at times during the Class Period, the Gabelli Entities and affiliates held more than 1.2% of Garrett common stock.

The Gabelli Entities enlisted undersigned counsel to investigate and ultimately file their Complaint following extraordinary admissions by Garrett on the first day of the Company's and

---

[1] Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

its affiliated debtors' September 2020 bankruptcy in this District before the Honorable Judge Michael Wiles (the "Chapter 11 Cases"). In its first day submissions and hearings, Garrett remarkably revealed that the Spin Off was the result of a sham process facilitated by a one-sided negotiation with Honeywell, and the resulting debt structure and asbestos indemnity obligations forced on Garrett by Honeywell made it virtually impossible for Garrett to remain competitive as an independent company. (Compl. ¶¶ 3-9, 75-81). Indeed, in a recent hearing before Judge Wiles, Garrett's counsel acknowledged the Company was "effectively insolvent" at the time of the Spin Off.

Significantly, this reality was exactly the opposite of the Class Period statements by Garrett and its directors and officers during the two years after the Spin Off in which they touted, among other things, the Company's "strong balance sheet" and "significant financial flexibility" to deal with the constantly shifting automobile supply sector. (Compl. ¶¶ 101-103). Ultimately, the Gabelli Entities sustained significant losses when the truth about Garrett was revealed and the Company's market capitalization declined by more than $530 million. (Compl. ¶ 12).

The Actions arise out of the Class Period misstatements and omissions regarding the Company's viability following its Spin Off from Honeywell. The Actions assert claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

The Gabelli Entities respectfully submit they should be appointed as lead plaintiff for the putative Class. As detailed below, the Gabelli Entities suffered **$9,962,087** in (LIFO) damages if shares received in the Spin Off are treated as purchases, and **$7,105,464** in (LIFO) damages if Spin Off shares are treated as prior holdings. *See* Entwistle Decl., Exhs. A-C. The Gabelli Entities are unaware of any lead plaintiff movant with greater losses and, consequently, they are entitled to the

presumption that they are the "most adequate plaintiffs" under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The Gabelli Entities also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Their claims are typical of absent Class members and they will fairly and adequately represent the interests of the Class. Indeed, this is demonstrably so. The Gabelli Entities have already taken significant affirmative steps in these Actions to protect the interests of the Class, including conducting a months-long investigation of the facts giving rise to the claims against Defendants, filing a detailed complaint and drafting and circulating a stipulation (the "Stipulation") (No. 1:20-cv-0896-JPC, ECF No. 10) among the other appearing parties to facilitate an orderly schedule for briefing on any motions to dismiss.

Moreover, the parent company of certain of the Gabelli Entities appeared on the first day in the Chapter 11 Cases and has been working to protect the interests of equity holders. And affiliates of the Gabelli Entities have a demonstrated record of successfully acting as lead plaintiffs – having recovered more than $200 million on behalf of investors in two recent class actions involving bankrupt companies.

The Gabelli Entities also respectfully request that the Court approve their choice of Entwistle & Cappucci as lead counsel for the Class. Entwistle & Cappucci is a nationally recognized law firm that has extensive experience litigating complex securities class actions that have resulted in the successful recovery of billions of dollars for the benefit of injured investors, and is eminently qualified to prosecute the Actions.

Finally, the Gabelli Entities also respectfully request that the Court consolidate the Actions, which promotes efficiency and is preferred by the parties, as reflected in the Stipulation.



presumption that they are the "most adequate plaintiffs" under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

The Gabelli Entities also meet the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Their claims are typical of absent Class members and they will fairly and adequately represent the interests of the Class. Indeed, this is demonstrably so. The Gabelli Entities have already taken significant affirmative steps in these Actions to protect the interests of the Class, including conducting a months-long investigation of the facts giving rise to the claims against Defendants, filing a detailed complaint and drafting and circulating a stipulation (the "Stipulation") (No. 1:20-cv-0896-JPC, ECF No. 10) among the other appearing parties to facilitate an orderly schedule for briefing on any motions to dismiss.

Moreover, the parent company of certain of the Gabelli Entities appeared on the first day in the Chapter 11 Cases and has been working to protect the interests of equity holders. And affiliates of the Gabelli Entities have a demonstrated record of successfully acting as lead plaintiffs – having recovered more than $200 million on behalf of investors in two recent class actions involving bankrupt companies.

The Gabelli Entities also respectfully request that the Court approve their choice of Entwistle & Cappucci as lead counsel for the Class. Entwistle & Cappucci is a nationally recognized law firm that has extensive experience litigating complex securities class actions that have resulted in the successful recovery of billions of dollars for the benefit of injured investors, and is eminently qualified to prosecute the Actions.

Finally, the Gabelli Entities also respectfully request that the Court consolidate the Actions, which promotes efficiency and is preferred by the parties, as reflected in the Stipulation.

## FACTUAL BACKGROUND

As described more fully in the Complaint, Garrett became a publicly traded company following the Spin Off from Honeywell on October 1, 2018. (Compl. ¶¶ 2, 88). The Spin Off of Garrett was conducted through a sham negotiation process run completely by Honeywell and its conflicted representatives. (Compl. ¶¶ 3, 53-59). Indeed, one of Honeywell's in-house lawyers, assistant general counsel Defendant Su Ping Lu, was the sole representative of Garrett during much of the Spin Off negotiations. (Compl. ¶¶ 3, 54). Moreover, amazingly, Garrett was advised by the *same law firm and financial advisors that advised Honeywell*. (*Id.*). As a result of the Spin Off, Honeywell forced Garrett to issue $1.6 billion in new indebtedness to fund a cash distribution to Honeywell, and caused a subsidiary of Garrett to enter into a financially extraordinary indemnity agreement (the "Indemnity Agreement") with a term of 30 years and *maximum payments up to $5.25 billion* to reimburse Honeywell for legacy asbestos exposure arising out of an unrelated Honeywell business. (Compl. ¶¶ 4, 62, 67).

Because of the Indemnity Agreement and other obligations imposed upon Garrett by Honeywell, Garrett and its senior executives knew since the time the Spin Off that it would be virtually impossible for Garrett to remain competitive as an independent company and Garrett would likely be forced into bankruptcy for at least the following reasons, which were confirmed in the Company's filings in the Chapter 11 Cases:

- Garrett's business model and industry position requires constant investment in new technology, both to improve the Company's existing products and to develop new products to meet customer demands. Because Garrett's balance sheet was heavily burdened by debt and the Indemnity Agreement since the Spin Off, Garrett's ability to make investments in technology to preserve its business for the future was severely constrained and it had no access to incremental debt to fund R&D or capital expenditures;

- Garrett's precarious balance sheet created by the Spin Off would make it difficult for Garrett to maintain its business and financial relationships with

customers and suppliers and, because the Company was substantially overleveraged compared to all of its primary competitors (even before considering the effects of the Indemnity Agreement), customers and suppliers had growing concerns about its viability and its growing technological disadvantages;

- Garrett's leverage and indemnity obligations would make it nearly impossible for the Company to navigate the highly uncertain and rapidly shifting automotive industry. In recent years, the automotive industry has been highly uncertain due to technological changes and unprecedented disruptions, which has led to increased competition from new participants. Since the time of the Spin Off, the Company's ability to participate in such consolidation and compete on a going-forward basis was effectively precluded by its capital structure; and

- Garrett did not have access to the equity capital necessary to grow as an independent company and no lender or investor would contribute new equity capital subordinate to both the Company's funded debt and its indemnity obligations.

(Compl. ¶¶ 12, 165).

Instead of disclosing these known problems that would undermine Garrett's viability, Defendants issued misleading statements, such as contending the obligations "*may*" negatively impact the Company when they already had, as well as falsely advertising to investors that Garrett has "significant financial flexibility." (Compl. ¶¶ 8-9).

Ultimately, the truth was revealed through a series of partial disclosures in August and September 2020. First, on August 26, 2020, Garrett issued a press release elaborating on the challenges imposed by its capital structure and announcing the Company was exploring strategy alternatives – a process that, unbeknownst to investors, had been ongoing for more than a year. (Comp. ¶¶ 10, 13, 169). This news caused Garrett's stock price to fall $3.04 per share, or 44%. (Compl. ¶¶ 10, 169). Next, on September 18, 2020, *The Wall Street Journal* reported that Garrett was nearing bankruptcy, causing Garrett's stock price to fall an additional $0.40 per share, or 16%. (Compl. ¶¶ 11, 170).

Finally, on September 20, 2020, Garrett commenced the Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York. (Compl. ¶¶ 12, 171). Certain Gabelli Entities' parent company appeared in the Chapter 11 Cases on September 21, 2020 and the Gabelli entities filed their Complaint on October 5, 2020.

## ARGUMENT

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons that: (i) has either filed the complaint or made a motion in response to the a notice; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2017 WL 838197, at *1 (S.D.N.Y. Mar. 2, 2017); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption that the person or group of persons with the largest financial interest in the relief sought (and having requested appointment) is the "most adequate plaintiff" may be rebutted only upon "proof" that that person or group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *Springer*, 2017 WL 838197 at *2; *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *2 (S.D.N.Y. Apr. 5, 2016).

### I. THE GABELLI ENTITIES ARE THE "MOST ADEQUATE PLAINTIFF"

The Gabelli Entities respectfully submit that they are presumptively the "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, possess the

largest financial interest of any movant and otherwise satisfy Rule 23's typicality and adequacy requirements.[2]

**A. The Gabelli Entities Possess the Largest Financial Interest in the Actions**

The Gabelli Entities should be appointed lead plaintiff because they have the largest financial interest in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Comparing potential lead plaintiffs' financial interests in the litigation requires first calculating those interests. Where, as here, potential lead plaintiffs' financial stakes depend, in part, on transactions of common stock, courts in this circuit typically consider the *Olsten-Lax* factors. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *Lax v. First Merch. Acceptance Corp.,* No. 97 C 2715, 1997 WL 461036, at *5-6 (N. D. Ill. Aug. 11, 1997). Those factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Lax,* 1997 WL 461036, at *5. Of the four factors, the last is most determinative. *See In re Blue Apron Holdings,* No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017).

Including the shares received from the Spin Off as Class Period purchases (at the 10/1/2018 Closing Price), the Gabelli Entities' financial interest is as follows:

[2] The Gabelli Entities have satisfied the PSLRA's procedural requirements. The Court's selection of the lead plaintiff is limited to those members of the Class that filed a complaint or timely filed a motion for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). In addition to certain Gabelli Entities filing the Complaint, the Gabelli Entitles have timely filed their motion within 60 days of the publication of notice of the Actions. The notice of pendency was published by Glancy Prongay & Murray LLP on September 25, 2020 (*see* Entwistle Decl., Exh. D), making the deadline for this motion November 24, 2020.

**Losses (Counting Spin-Off Shares as Purchases)**

| Fund | Actual Losses (FIFO / LIFO) | Shares Purchased | Net Shares Purchased | Funds Expended | Net Funds Expended |
|---|---|---|---|---|---|
| GAMCO Asset Management Inc. | $8,423,833 (FIFO)<br>$8,413,456 (LIFO) | 962,988 | 607,331 | $13,327,436 | $10,445,040 |
| The Gabelli Asset Fund | $486,455 (FIFO)<br>$486,455 (LIFO) | 97,000 | 77,000 | $894,118 | $744,028 |
| The Gabelli Dividend and Income Trust | $470,349 (FIFO)<br>$470,349 (LIFO) | 107,082 | 85,000 | $1,004,603 | $754,682 |
| The Gabelli Value 25 Fund Inc. | $591,827 (FIFO)<br>$591,828 (LIFO) | 54,400 | 34,000 | $853,647 | $705,561 |
| **TOTAL** | **$9,972,465 (FIFO)<br>$9,962,087 (LIFO)** | **1,221,470** | **803,331** | **$16,079,804** | **$12,649,311** |

Excluding shares received from the Spin Off (i.e. counting those shares as beginning holdings instead of Class Period purchases), the Gabelli Entities' financial interest is as follows:

**Losses (Counting Spin-Off Shares as Beginning Holdings)**

| Fund | Actual Losses (FIFO / LIFO) | Shares Purchased | Net Shares Purchased | Funds Expended | Net Funds Expended |
|---|---|---|---|---|---|
| GAMCO Asset Management Inc. | $7,500,310 (FIFO)<br>$6,311,729 (LIFO) | 823,291 | 467,634 | $10,758,409 | $7,876,012 |
| The Gabelli Asset Fund | $184,494 (FIFO)<br>$172,804 (LIFO) | 71,400 | 51,400 | $423,334 | $273,244 |
| The Gabelli Dividend and Income Trust | $154,705 (FIFO)<br>$155,480 (LIFO) | 74,400 | 52,318 | $403,581 | $153,660 |
| The Gabelli Value 25 Fund Inc. | $532,532 (FIFO)<br>$465,450 (FIFO) | 46,000 | 25,600 | $699,171 | $551,085 |
| **TOTAL** | **$ 8,372,041 (FIFO)<br>$7,105,464 (LIFO)** | **1,015,091** | **596,952** | **$12,284,494** | **$8,854,002** |

To the best of the Gabelli Entities' knowledge, there are no other movants that have sought, or are seeking, lead plaintiff appointment that have a larger financial interest arising from transactions in Garrett securities. Accordingly, the Gabelli Entities are the presumptive "most adequate plaintiffs." 15 U.S.C. § 78u-4(a)(3)(B)(iii)

### B. The Gabelli Entities Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to the largest financial interest requirement, the PSLRA directs that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) requires, among other things, that a proposed lead plaintiff: (i) has claims that are typical of those of the class; and (ii) will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). At the lead plaintiff selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 37 (S.D.N.Y. 2012) ("In fact, a wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.") (citation omitted). As detailed below, the Gabelli Entities plainly satisfy the typicality and adequacy requirements of Rule 23.

Pursuant to Rule 23(a)(3), the typicality requirement is satisfied as long as claims arise from a similar course of conduct and share the same legal theory, even when there are factual differences. *Facebook*, 288 F.R.D. at 37 ("However, the claims of the class representative need not be identical to those of all members of the class . . . [t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (citation omitted). The requirement is satisfied here because the Gabelli Entities are not subject to any unique or special defense and seek the same relief and advance the same legal theories as other Class members. Like the other members of the Class, the Gabelli Entities purchased Garrett securities during the Class Period at prices artificially inflated by Defendants' misrepresentations and omissions and suffered damages as a result.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied when:

> (1) [proposed] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.

*Maliarov*, 2016 WL 1367246, at *6.

The Gabelli Entities satisfy these elements because their sophistication and substantial financial stake in the litigation provide the ability and incentive to vigorously represent the Class' claims. Indeed, their interests are perfectly aligned with those of the other Class members and are not antagonistic in any way to those interests. There are no facts to suggest any actual or potential conflict of interest or other antagonism between the Gabelli Entities and other Class members.

Moreover, the Gabelli Entities have demonstrated they are qualified and able to conduct the litigation. Members of the Gabelli Entities investigated and filed a detailed Complaint against the Defendants and have actively sought to protect the interests of the Class in the Chapter 11 Cases. And affiliates of the Gabelli Entities successfully acted as lead plaintiffs in recent class actions against: (i) the directors, officers, private equity sponsors and underwriters of Cobalt International Energy, Inc., an insolvent oil exploration company, recovering more than $169 million, and (ii) Akorn, Inc., an insolvent pharmaceutical company, recovering $27.5 million (100% of the company's available insurance).

Finally, the Gabelli Entities have demonstrated their adequacy through their selection of Entwistle & Cappucci as lead counsel to represent the Class. As discussed more fully below, Entwistle & Cappucci is highly qualified and experienced in securities class action litigation, having repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

### C. The Gabelli Entities Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Enacted the PSLRA

In addition to satisfying the requirements of Rule 23, the Gabelli Entities – consisting of sophisticated institutional investors experienced in acting as a fiduciaries – are precisely the type of investors Congress sought to encourage to assume a more prominent role in securities litigation when it enacted the PSLRA. Congress explained in its PSLRA Statement of Managers Report that the PSLRA was formulated "to increase the likelihood that institutional investors will serve as lead plaintiff []," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." *In re Cendant Corp. Litig.*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (quoting H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 737); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) ("By enacting the PSLRA . . . Congress sought to increase the likelihood that institutional investors will step forward as the ideal lead plaintiffs in private securities litigation.") (citation omitted).

## II. THE COURT SHOULD APPROVE THE GABELLI ENTITIES' CHOICE OF LEAD COUNSEL

Entwistle & Cappucci is among the preeminent securities class action law firms in the country, with offices in New York and Texas. *See* Entwistle Decl., Ex. E. The firm has extensive experience successfully prosecuting some of the largest and most complex class actions in history and has distinguished itself as one of the nation's premier complex litigation firms, regularly pursuing multi-jurisdictional cases against well-funded opponents, including large corporations and financial institutions. The firm has served in a leadership capacity in some of the highest-

profile securities litigation matters in recent years, recovering over $4 billion for its clients and other investors.

Significant cases in which Entwistle & Cappucci served in a leadership capacity and obtained significant recoveries on behalf of the respective classes include:

(1) *In re Cobalt International Energy, Inc. Securities Litigation*, No. 14-cv-3428 (S.D. Tex.), in which Entwistle & Cappucci prosecuted securities claims against oil and gas company Cobalt International Energy, Inc. and related defendants. In that case, Entwistle & Cappucci served as co-lead counsel and recovered $169.35 million in cash, in addition to $220 million payable from director and officer liability policies on behalf of a class of investors.

(2) *In re MF Global Holdings Ltd. Investment Litigation*, No. 12-md-2338-VM (S.D.N.Y.), in which Entwistle & Cappucci — appointed co-lead counsel for the worldwide class of commodities investors — worked with the trustee appointed under the Securities Investor Protection Act to recover all $1.6 billion in net equity lost by commodity customers after the collapse of MF Global;

(3) *In re Royal Ahold Securities Litigation,* No. 03-md-01539-CCB (D. Md.), in which Entwistle & Cappucci served as lead counsel representing the Public Employees' Retirement Association of Colorado as lead plaintiff, recovering a $1.1 billion partial settlement of the action, representing approximately 40% of estimated provable damages;

(4) *In re Allergan, Inc. Proxy Violation Derivatives Litigation*, No. 17-cv-04776 DOC(KESx) (C.D. Cal.), where Entwistle & Cappucci, as co-lead counsel on behalf of investors in derivative securities of Allergan, Inc., negotiated a $40 million settlement of claims that Valeant Pharmaceuticals International, Inc. ("Valeant") and certain officers shared material non-public information with Pershing Square Capital Management, L.P. and certain affiliated individuals and entities concerning Valeant's plan to take over Allergan, Inc. in exchange for Pershing Square's support for the takeover; and

(5) *Shapiro v. JPMorgan Chase, et al.*, No. 11-cv-8331 (S.D.N.Y.), where Entwistle & Cappucci — collaborating with the liquidation trustee for Bernard L. Madoff Investment Securities and the United States Attorneys' Office — worked to structure and negotiate the resolution of claims against JPMorgan Chase & Co. for failure to disclose or report to investors facts related to the Madoff Ponzi scheme, resulting in contemporaneous and related settlements totaling $2.243 billion.

Entwistle & Cappucci was also appointed class counsel for minority investors of Clear Channel Outdoor Holdings, Inc. ("CCOH") in CCOH's separation from controlling stockholder

iHeartCommunications, Inc. in connection with the iHeartMedia, Inc. bankruptcy in the Southern District of Texas. A settlement of the CCOH/iHeart matter was recently approved by both Bankruptcy Judge Marvin Isgur and Chief District Judge Lee Rosenthal, who was enlisted to review the Rule 23 aspects of the settlement. The firm was also appointed as defense liaison counsel in connection with the Tribune Company bankruptcy and related litigation in the Southern District of New York.

More information about the Firm is available at: https://entwistle-law.com

## III. THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that a court should consolidate securities class actions brought "on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Under Federal Rule of Civil Procedure 42(a), a court may consolidate actions "if [the] actions before the court involve a common question of law or fact."

Here, the Actions involve the same operative facts, assert the same claims for violations of the Exchange Act and name the same defendants. Consolidation would avoid duplicative discovery, motion practice and other proceedings that will result if the Actions are not consolidated. Toward that end, the Joint Stipulation filed by the parties (No. 1:20-cv-08296-JPC, ECF No. 10) stipulates that the Actions should be consolidated.

## CONCLUSION

For the foregoing reasons, the Gabelli Entities respectfully request that the Court: (1) appoint them to serve as lead plaintiff in the Action; (2) approve their selection of Entwistle & Cappucci as lead counsel for the Class; (3) consolidate for all purposes the Actions and any subsequently filed, removed or transferred actions that are related to the claims asserted in the above-captioned Actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (4) grant any such further relief as the Court may deem just and proper.

DATED: November 24, 2020  Respectfully submitted,

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
Vincent R. Cappucci
Joshua K. Porter
Andrew M. Sher
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, New York 10171
Telephone: (212) 894-7200

*Counsel for the Gabelli Entities and Proposed Lead Counsel for the Class*